IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KIMBERLY W.,[1]                                                  Case No. 1:20-cv-02108-CL

                    Plaintiff,                                   **OPINION AND ORDER**

        v.

KILOLO KIJAKAZI, Commissioner of
Social Security,

                    Defendant.

_____

**CLARKE, U.S. Magistrate Judge.**

        Kimberly W. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of her application for Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act.  The Court has jurisdiction to hear this

appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C.

§ 405(g).  For the reasons explained below, the Court affirms the Commissioner's decision.

_____

        [1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case.  Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I. PLAINTIFF'S APPLICATION

Plaintiff filed her application for DIB on April 27, 2018, alleging disability beginning November 30, 2017. (Tr. 13.) Plaintiff's claim was denied initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge (ALJ). (*Id.*) After an administrative hearing held May 14, 2020, ALJ Steven A. De Monbreum issued a written opinion denying Plaintiff's claim. (Tr. 17-31, 32-85.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6.) This appeal followed.

PAGE 2 – OPINION AND ORDER

## II.   THE SEQUENTIAL ANALYSIS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari,* 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert,* 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett,* 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante,* 262 F.3d at 954 (citations omitted).

## III.   THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine whether Plaintiff was disabled. (Tr. 16-31.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 30, 2017. (Tr. 16.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments:

PAGE 3 – OPINION AND ORDER

degenerative disc disease; obesity; peripheral neuropathy of the upper and lower extremities with

a history of bilateral carpal tunnel syndrome, status-post surgery; bipolar disorder; depression; and

anxiety-related disorder. (Tr. 16.)

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination

of impairments that meets or equals a Listing. (Tr. 17.)

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), finding that

Plaintiff retained the ability to perform light work with the following limitations:

> frequent climbing of ramps or stairs, balancing, stooping, kneeling, crouching or crawling;
> occasional climbing of ladders, ropes, scaffolds; no exposure to hazards such as dangerous
> machinery and unprotected heights; [Plaintiff] is limited to simple, routine job tasks
> consistent with a DOT GED reasoning level of 2 or less; no interaction or contact with the
> public, and occasional interaction with coworkers and supervisors; [and Plaintiff] needs a
> static work environment with few changes in work routines or settings.

(Tr. 18.)

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as

a secondary school teacher. (Tr. 24.) At step five, the ALJ determined that Plaintiff could perform

jobs existing in significant numbers in the national economy, including routing clerk, inspector,

hand packager, and garment sorter. (Tr. 25.) The ALJ therefore concluded that Plaintiff was not

disabled. (Tr. 25-26.)

Plaintiff argues that the ALJ erred by (1) improperly evaluating the medical opinion of

psychiatric nurse Devin Smith; (2) improperly rejecting Plaintiff's subjective symptom testimony;

(3) failing to consider Plaintiff's combined limitations at step three of the sequential analysis; and

(4) rejecting the lay witness testimony.

## DISCUSSION

## I.    MEDICAL OPINION EVIDENCE

Plaintiff first argues that the ALJ improperly evaluated the medical opinion of Devin Smith, NP. An ALJ's decision to discredit any medical opinion must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citing *Nguyen v. Chater,* 100 F.3d 1462, 1464 (9th Cir. 1996)).

Nurse Smith was Plaintiff's treating psychiatric nurse practitioner beginning in 2011. On March 24, 2020, Nurse Smith opined in a letter that Plaintiff had marked limitations in mental functioning. (Tr. 1051-52.) The ALJ found Nurse Smith's statements unpersuasive and inconsistent with the longitudinal medical record. (Tr. 19.) In the Ninth Circuit, an ALJ may discount part of a medical opinion when it is inconsistent with the overall medical record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the ALJ determined that Nurse Smith's opinion was contradicted by the findings of examining physician Thomas Shields, M.D. Dr. Shields examined Plaintiff and found that her persistence and pace would be impacted by the "cyclic nature of her mood condition as well as her panic attacks and agoraphobia," but endorsed generally mild restrictions on mental functioning. (Tr. 765-66.) Dr. Shields therefore explicitly

acknowledged the waxing and waning of Plaintiff's bipolar symptoms, but nevertheless found Plaintiff capable of understanding, remembering, and carrying out short and simple instructions. (Tr. 20, 765-66.) Dr. Shields's opinion was consistent with other medical evidence in the record, including the opinions of Daniel Malone, Ph.D., and Benn Kessler, Psy.D., who examined the record and opined that Plaintiff's anxiety would not pose a serious limitation to performing work (tr. 96-98); and that Plaintiff could carry out simple and routine tasks. (Tr. 112-14.) Finally, the ALJ noted that other providers consistently opined that Plaintiff exhibited relatively benign and mild mental symptoms, which contradicted Nurse Smith's assessment of marked limitations. (Tr. 21, 969, 971-72, 974, 978, 982, 990, 993, 999, 1003, 1052.) While Plaintiff notes that the symptoms of bipolar disorder are cyclical and thus not expected to be consistently observable to medical professionals, the ALJ's evaluation of the longitudinal record here was reasonable given the weight of the evidence of mild to moderate limitations. On this record, the ALJ's determination that Nurse Smith's opinion was unpersuasive given the weight of conflicting medical evidence throughout the record was supported by substantial evidence.

## II.  SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff next argues that the ALJ improperly rejected her subjective symptom testimony. The ALJ is required to provide specific, clear and convincing reasons for rejecting a claimant's testimony. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). At the administrative hearing, Plaintiff testified that she was unable to work primarily due to her mental limitations, including panic and mood symptoms that she had experienced for years. (Tr. 21, 40, 69.) Plaintiff testified that over the last four or five years, her mental impairments of bipolar disorder, panic attacks, and agoraphobia had steadily worsened. (Tr. 40.) Plaintiff alleged problems with memory, completing tasks, concentration, understanding, and following directions. (Tr. 225.) In a function report,

PAGE 6 – OPINION AND ORDER

Plaintiff wrote that she is limited to lifting up to 5 pounds and that she has serious physical reactions to pain in her hands and back. (Tr. 227.)

The ALJ rejected Plaintiff's testimony to the extent that it conflicted with the RFC. (Tr. 21.) The ALJ first noted that Plaintiff's statements regarding her physical limitations were incompatible with the medical evidence. The ALJ may consider objective medical evidence when assessing a claimant's testimony and may discount a claimant's statements if medical opinion evidence contradicts the claimant's subjective testimony. 20 C.F.R. 404.1529(c)(2); *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008). Here, the ALJ noted that while Plaintiff complained of agoraphobia, panic attacks that prevented her from social activities, and racing thoughts that prevented her from focusing, Plaintiff's treating physician noted normal mental status and no acute distress upon examination over a nearly two-year span. (Tr. 969, 971-72, 974, 978, 982, 990, 993, 999, 1003.) Plaintiff argues, citing *Diedrich v. Berryhill*, 874 F.3d 634 (9th Cir. 2017), that it was improper for the ALJ to rely upon these medical reports to draw conclusions about Plaintiff's mental functioning. In *Diedrich*, the court found that it was improper for the ALJ to draw conclusions about the claimant's mental state based on the opinion of an orthopedist who made no observations whatsoever regarding the claimant's mental state and reported only on her physical symptoms. Here, by contrast, the ALJ refers to treatment notes that specifically document Plaintiff's mental status and level of distress. *Diedrich* is therefore inapposite. It was reasonable for the ALJ to determined that evidence of Plaintiff's consistently normal mental status contradicts her testimony regarding severe mental limitations.

The ALJ also determined that Plaintiff's testimony regarding her disabling limitations was undermined by the fact that her symptoms were relieved using only conservative treatment. (Tr. 22-23.) A claimant's course of treatment is a valid consideration for the ALJ when assessing the

claimant's testimony. 20 C.F.R. § 404.1529(c)(3). Here, the ALJ noted that Plaintiff's pain treatment "has remained conservative;" specifically, Plaintiff underwent successful carpal tunnel release in July 2018 and was "back to regular activity" a few weeks later. (Tr. 22, 641.) Plaintiff's physician also explained that Plaintiff "can continue with all activity without restriction" following the release procedure, contradicting Plaintiff's contention that she could use her hands for just five minutes and lift only five pounds. (Tr. 225, 643.) Finally, Plaintiff reported that her medication provided significant pain relief, and reported no chronic physical concerns to her treatment provider in 2019 and 2020. (Tr. 958, 965-66.) On this record, it was reasonable for the ALJ to find Plaintiff's testimony regarding debilitating and chronic pain unpersuasive. In sum, the ALJ provided legally sufficient reasons for rejecting Plaintiff's testimony regarding both her mental and physical limitations, and these reasons are supported by substantial evidence in the record.

## III.    STEP THREE FINDINGS

Plaintiff also argues that the ALJ failed to consider her combined impairments at step three of the sequential evaluation. Plaintiff alleges that her combined impairments produced disabling limitations due to pain. To show harmful error at step three, a claimant must offer credible evidence showing that she meets a listing. *Valentine v. Comm'r*, 574 F.3d 685, 692, n.2 (9th Cir. 2009). Here, Plaintiff fails to point to any persuasive evidence that establishes the criteria for any listed impairment. For this reason, the Court finds no error at step three.

## IV.    LAY WITNESS TESTIMONY

Plaintiff argues, finally, that the ALJ erred because he ignored the lay testimony of Plaintiff's husband, Brian W. The ALJ need only provide germane reasons for rejecting a lay witness's testimony. *Valentine*, 574 F.3d at 694. Failure to discuss a lay witness's testimony is harmless if the lay witness does not describe any limitations beyond those described by the

claimant, and the ALJ provides legally sufficient reasons for finding the claimant's testimony unpersuasive. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012).

Mr. W. completed a function report regarding Plaintiff's abilities and limitations. (Tr. 285-93.) He opined that Plaintiff suffered debilitating limitations from her bipolar disorder. (*Id.*) Mr. W.'s opinion largely mirror's Plaintiff's testimony, and as discussed above, the ALJ properly found Plaintiff's testimony to be unpersuasive. Further, the ALJ accepted medical evidence that contradicts Mr. W.'s testimony that Plaintiff suffered from severe mental limitations, including evidence from reviewing and examining psychologists, who assessed mild limitations. (Tr. 96-98, 112-14, 766.) An ALJ may reasonably rely upon a medical source opinion in favor of lay witness testimony. *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2005). For these reasons, the ALJ's rejection of Mr. W.'s lay testimony does not constitute harmful error. *Molina*, 674 F.3d at 1122.

## CONCLUSION

For the reasons stated, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

DATED this 3 day of August, 2022.

_____
MARK CLARKE
United States Magistrate Judge

PAGE 9 – OPINION AND ORDER